MONCURE," P.
This case involves the construction of the will of the late Judge • Thomson E. Mdson, of Alexandria. He died on the 21st of December, 1838, and his will bears date on the 14th day of that month. He left a large estate, real and personal, which was somewhat involved in debt, and a large family, consisting of a wife about thirty-seven years of age, and nine children, of whom five *were daughters and four were sons, all of whom were infants, and some of whom were of very tender years. He had great confidence in the discretion, good management and affection of his wife, as his will plainly shows, and his'confidence was not misplaced, as abundantly appears from the record. Making his will under these circumstances and with these surroundings, we would naturally expect him to give her an ample portion of his estate, at least during her life or widowhood, and to invest her with extensive power and discretion in appropriating the remainder of the estate to the benefit of their children. When we come to' read the will, this natural expectation will not be disappointed.
By the first clause, he subjects his estate to the payment of his debts. The rest of the will, down to the concluding clause, “In witness whereof,” &c., being all of it material to the decision of the questions involved in this case, is as follows:
“Secondly. I devise all my estate, real and personal, in possession, remainder or reversion, or in expectancy, to my beloved wife, B. C. M., for her maintenance and support, and for the maintenance and support of our children during her life and widowhood; in the event of her marriage, she is to be restricted to her dower and dis-tributary share, as in case of intestacy.
“Thirdly. I authorize my wife, during her widowhood, by deed or will, to dispose of all or any part of my estate, to our children of to any of them, at such times and in such proportions as she may think just and prudent; and if she marry or die without having exercised this power, then the estate remaining undisposed of shall be divided amongst my children, by assigning to the males double the amount of the shares assigned to the females: Provided, that if my wife should die after having exercised her powers .of appointment in favor of one or more of our children, ^'without having fully exercised it as to all my estate, the child or .children so advanced shall, on the partition of my estate before directed, be held accountable for, and be charged with, the advancement received. The power of appointment given to my wife shall be construed to extend to the descendants of any of our children who may die before her; and in the division before directed, the descendants of any deceased child or children shall be considered as entitled to the same share the parent or parents, if living at the time of such división, would be entitled to.
“Fourthly. I authorize my wife to sell, dispose of and convey all or any part of my estate for the payment of my debts or the advancement of the interests of my family, and to make such investments of the money or property she may receive as she may think most advisable; such investments, however, to be in all respects subject to the provisions hereinbefore contained for the disposal of my estate.
“Eifth. I direct that no appraisement be made of my estate.
“Sixth. I constitute my beloved wife, Betsey C. Mason, sole executrix of this my will and guardian of my children, and direct that no security shall be required of her in either capacity.
“F,or any aid or assistance which my wife may require in the management of my estate, I recommend her to my brother, Richard C. Mason, and my most excellent friends, Benjamin King and Bernard Hooe; and if she shall find occasion for legal advice or information, I recommend her to consult my friends, Robert J. Taylor and Richard H. Henderson.”
The first question involved in this case arises under the second clause of the will. The widow, who never married after the death of her husband, applied the income and profits of the estate, so far as was necessary, not only to *the maintenance and support of herself, but also to the maintenance and support of all her children, so long as they remained with her and in her .family respectively, without any charge for the same, and without any complaint whatever on the part of any of them. The female appellant, after her fa-ther’s death and until her marriage, a period of about nine years, lived with her mother, and was maintained and supported by her as aforesaid, and for some time after the marriage both of the appellants lived with the said mother, and were maintained and supported in the same way, and without any charge therefor. But the appellants having long' since left the family and become foris-familiated, as it is called, claim to be entitled to receive a portion of the income and profits of the estate for their maintenance and support since they left the family, and during the life or widowhood of her mother. In other words, *711 they claim that the second clause of the will creates a trust for the maintenance and support of the widow and children of the testator during her life or widowhood, which trust they, the appellants, are entitled to enforce for their benefit in a court of equity. While, on the other hand, the widow claims that the said clause creates not trust which can be enforced in equity, but gives her the estate during her life or widowhood to do with as she pleases, though the nature of the gift, as expressed by the testator, was the maintenance and support, not only of herself, but also of their children. The question, therefore, is, which of these two conflicting constructions is the true one? Does the second clause of the will create a trust for the maintenance and support of the children as well as the widow, which the appellants are entitled to have enforced in equity for their benefit, or does it give an interest only to the widow, referring to the subject of maintenance and support merely as a motive for the gift?
I am of opinion that the latter is the true construction. *An intention to give the whole estate to the wife during her life or widowhood, to do with the income and profits as she pleases, confiding in her that she would do what might be proper in regard to the maintenance and support of her children as well as herself, but not giving them any interest in the subject which they could enforce against her, is a reasonable intention, and such a one as might well have been entertained by the testator. There is no presumption, therefore, arising from considerations of hardship or injustice to the children, that such an intention did not exist. And whether it did or not, must be ascertained by reading the will in the light of surrounding circumstances.
In the first place, let us examine the second clause by itself, without reference to the context and the surrounding circumstances. “I devise all my estate &c. to my beloved wife.” Here is an express devise, in the broadest possible terms, to his beloved wife only. The clause then immediately goes 'on to express the purpose and motive of the devise; “for her maintenance and support, and for the maintenance and support of our children.” He thus says to his children: “I have not forgotten you, or left you unprovided for. I have not given you any present interest in my estate, because I know not what will be the extent of your several wants; but I have left it all to your mother, to afford her ample means of supplying your wants, which • her affection for you will prompt her to do, and which I confide in her doing.” But the gift of the whole estate to her is limited “during her life or widowhood.” He knew that he could safely confide in her doing what was right in regard to their children so long as she might remain his widow, but apprehended that she might not have it in her power to do so if she married again. He knew that if he gave his estate to his wife during her life, and she should marry again, it would then become ^vested in her husband, and thus be placed beyond her power. Therefore, he limits the devise to her widowhood, and the clause concludes: “In the event of her marriage, she is to be restricted to her dower and distributary share, as in case of intestacy.” How here, it seems tome, is incontestible evidence that the testator intended to give his wife the entire income and profits of his estate, to do with as she pleased during her widowhood, although he believed that whatever surplus might remain after providing for her own maintenance and support would, as far as might be necessary or proper, be applied to the maintenance and support of their children. If he intended, as the appellants contend, to give the estate to his wife during her life or widowhood in trust for the maintenance and support of herself and their children, then in what proportion is the income of the trust subject to be apportioned among the beneficiaries? It may be said, that they are all to be maintained and ’supported, and as unequal sums may be required for the maintenance and support of each, according to their several ages and necessities, the income would not be appor-tionable equally,'but according to what was necessary for the maintenance and support of the parties respectively. This might be the case while the children were young, or remained together in the same family, although the apportionment, even to that extent, would be difficult and liable to objection and complaint. But after the children grew up and separated from the family, supposing the trust still to continue as contended for, there would seem to be no good reason for applying any other rule of apportionment to the case than that of equality. The trust, supposing it to be a trust, being precisely for the same purpose, “the maintenance and support” of all the parties, wife and children, the share of each when they all became adult and separately settled in life, if not before, would be the same. Indeed, the counsel for the ^appellants, while claiming for the female appellant full maintenance and support out of the estate during the life or widowhood of her mother, insists that, according to the true construction of the will, her mother is entitled to no more than her maintenance and support out of the estate, however large may be its annual income. According to that view, the surplus of the income, whatever it might be, if any, over and above the amount necessary to maintain and support the wife and children, would accumulate for the ultimate benefit of the children. Then, upon the construction contended for by the appellants, the wife would get during her life or widowhood only a share of the income of the estate, and if it were an equal share with each of her children, as there were nine children living at the testator’s death, he must have intended, according to that construction, to give her only one-tenth of the income of his estate during her life or *712 widowhood, inátead of one-third of the real estate and slaves during- her life, and one-third' of his other personal estate absolutely, to which she was entitled by law. But surely he did not intend to do this, as is conclusively shown by the very terms of the clause in question. He certainly intended to give her more by his will than the law would have given her, for he says: “In the event of her marriage, she is to be restricted to her dower and distributary share, as in case of intestacy.” What, then, must he have intended to give her by his will? Clearly the -whole income of his estate during her life or widowhood. How could he have intended to give her less? And if less, how much? Did he intend to leave his nine children, all of them infants, and some of them of very tender years, unprovided for during that, period? Certainly not. He knew that they needed care, support and education, and he was not an unnatural father. But he thought the best mode of providing for them during that period was, to *entrust them to their mother, and give her the whole income of his estate “for her maintenance and support, and for the maintenance and support” of their children. , He could not foresee what or how much each one of them would need, and he did not wish to limit or restrict his wife in the disposition of the subject according to her will and pleasure and her sense of propriety; but only indicated in his will the motive of the gift, and what was expected of the donee in regard to their children. It is difficult, if not impossible, to believe that he could have intended to make his wife accountable to his children for shares of the income of the estate during her widowhood, and even to entitle them, after having been maintained, supported and educated out of it during their infancy, and grown up, left the maternal roof and settled separately in life, to require a settlement of an account of the income and payment to them of distributive shares of it. He could not have intended to expose her in her declining years, to so much trouble and a’nnoyance. Having been called away by death at a comparatively early age, and leaving behind him a wife and nine young children, he thought he could do no better than to leave his wife in his place, in regard to his estate and the maintenance and support of herself and children, during her life or widowhood. His conclusion in this respect was not unreasonable. But however unreasonable it may have been, if it was his intention, as I think it clearly was, it must be carried into effect. As was said by Judge Brooke, in his dissenting opinion in Harrisons v. Harrison’s adm’x, 2 Gratt. 16, which is as remarkable for its good sense as for its brevity: “If a testator has complete dominion over his property, and can throw it into the sea if .he so will, I can see no reason why he may not give it absolutelj' to his wife. That the testator so intended in this case, I think there can be no doubt, if language can express ideas. That he did not intend *she should give it to a stranger, I admit. The answer to that suggestion is, that he did not believe she would give it to any but their children. Such was his confidence in her affection for them, that he intended to place her in the situation he himself occupied as to his property and children: to give her the control of both. The will is very short, and I think too plain for criticism. It may be an imprudent will; but we cannot make wills, but construe them according to the language in which they are expressed. Cujus est dare ejus est disponere. ”
The appellant’s counsel relies upon the fourth clause of the will as tending to show that the testator intended, by the second clause, to create a trust for the benefit of his wife and children. And he argues, that the fourth clause authorizes his wife to sell any part of his estate for the maintenance and-support of his family. So that,' according to his view, not only the income of the estate under the second clause, but the estate itself under the fourth clause, is charged with the maintenance and support of the wife and children during her life or widowhood. Now I do not so read and understand the will. The fourth clause, in my view, was merely intended to authorize the wife to sell any part of the estate for the payment of the testator’s debts or the advancement of the interests of his family. But it was not intended that the proceeds of sale might be consumed in the use of the family. On the contrary, the clause, after giving authority to make the sale, proceeds to direct an investment of the proceeds, thus: ‘ ‘And to make such investments of the money or property she may receive as she may think most advisable, such investments, however, to be in all respects subject to the provisions herein-before contained for the disposal of my estate.”
I have thus far been considering the second clause by itself, referring only incidentally to other parts of the will, *and I think it sufficiently indicates that it was not intended to create a trust for the benefit of the children, but only to make a provision for the wife during her widowhood, and to declare the motive which induced such a provision. It will be found that the rest of the will fully confirms this construction. By the third clause the testator gives to his wife extraordinary power and discretion in regard to his estate and his children, thus showing his unbounded confidence in her, so long at least as she might remain his widow. “I authorize my wife during her widowhood, by deed or will, to dispose of all or any part of my estate to our children, or to any of them, at such times and in such proportions as she may think just and prudent.” Can it be supposed that he would have given her > his extraordinary and uncontrolled power and discretion in regard to the disposition of the capital of his estate, if he intended to impose any limit on her power and discretion in disposing of the income *713 of his estate given to her during her widowhood? The same may be said of the power and discretion given her by the fourth clause of the will, already noticed — the power to sell the whole or any part of the estate, and invest the proceeds as she may think most advisable.
The unbounded confidence of the testator in his wife is further shown by the fifth clause of his will, which directs that no appraisement be made of his estate; and by the sixth, which constitutes her sole executrix of his will and guardian of his children, and directs that no security shall be required of her in either capacity. Por any aid or assistance she might require in the management of his estate, he recommends her to his brother Richard C. Mason, and his most excellent friends Benjamin King and Bernard Hooe, and if she should find occasion for legal advice or information, he recommends her to consult his friends Robert J. Taylor and Richard “H. Henderson.
*Thus stands the matter, looking to the second clause of the will and the context. Now if we look also at the surrounding circumstances, our construction will be still further confirmed. Those circumstances, or most of them, have already been incidentally referred to. They are, the extent and nature of the testator’s estate; the age of his wife; the confidence he reposed in her; and her worthiness of it in every respect; the number and ages of his children — nine in number — all of them infants, some of them of very tender years, and five of them daughters. He looked to her, as she says in her answer, ‘‘for the devotion of her life to the service of their children.” Under these circumstances he made his will, and reading it by the light which they afford, can there be a remaining doubt in regard to its meaning? I certainly have none.
Being thus satisfied as to what was the true intention of the testator expressed in the second clause of his will, X am relieved from the necessity of reviewing the many cases which were cited in the argument, as they all concur in affirming or conceding this cardinal rule of construction, that the intention of the testator as expressed in his will, if it be lawful, must prevail; and that to ascertain that intention, if it be at all doubtful, we may look to the whole will, and the surrounding circumstances under which it was executed. If a case could be produced precisely, or substantially like the present in all respects, it would have more or less weight in the decision of this case, and might even amount to a binding authority. But as it is extremely rare to find two cases alike in all respects, little or no aid can be derived by a court in construing a will from prior decisions construing other wills. It is not enough that the same words in substance, or even literally, have been construed in other cases. It often happens that the same identical words require very different constructions in differ-entj cases, according to the context and *the peculiar circumstances of each case. All the cases which have a material bearing on the subject now under consideration — I mean the English cases — including, I believe, all that were cited in the argument of this case, are collected and commented upon in the last Bondon edition, published in 1861, of Mr. Jarman’s invaluable work on Wills, vol. 1, pp. 356-374. Of all the cases which I have seen, the one which seems to throw most light on this, and to set forth most clearly the principle which I think applies to this case and must govern its decision, is the case of Thorpe v. Owen, decided by that great Judge, Vice-Chancellor Wigram, and reported in 2 Hare, 24 Eng. Ch. R. 608. The case was twice argued before him, and he delivered two opinions in it; the second after long and anxious consideration, and with a view of putting an end to the controversy. In calling for a second argument, he said: “My object is that my decision may be satisfactory to the parties, and that, so far as possible, they may be relieved from the necessity and expense of discussing this question elsewhere;” that is, in an appellate court. His decision seems to have been satisfactory to the parties, as no appeal appears to have been taken from it. And I have seen no case in which it has been questioned, while I have seen many in which it has been referred to and relied upon. The counsel on both sides in this case cited and relied upon it, though, of course, for different purposes; and neither of them doubted its soundness. The words of the will in that case were: “I desire everything to remain in its present position during the lifetime of my wife for her use and benefit; and after her decease I devise,” &c. “I give the above devise to my wife, that she may support herself and her children according to her discretion, and for that'purpose. ’ ’ It was held that the widow took an absolute interest for life in the real and personal estate. Now I consider this decision important in the present case, *not because of any substantial agreement in the words of the will in the two cases, for, as I have already said, that is a circumstance in itself not very material; but because of the importance of the principles and distinctions laid down by the Vice-Chancellor, and of the pertinency of many of his remarks to this case. “The cases,” he said, “should be considered under two heads: first, those in which the court has read the will as giving an absolute interest to the legatees, and as expressing also the testator’s motive for the gift; and secondly, those cases in which the court has read the will as declaring a trust upon the fund, or part of the fund, in the hands of the legatee. A legacy to A, the better to enable him to pay his debts, expresses the motive for the testator’s bounty, but certainly creates no trust which the creditors of A could enforce in this court; and again, a legacy to A, the better to enable him to maintain, or educate and provide for his family, must, in the ab *714 stract, be subject to a like construction: it is a legacy to the individual, with the motive only pointed out. This is very clearly, and, in my opinion, very correctly laid down by the Vice-Chancellor in the late case of Benson v. Whittam, (S Sim. R. 22) ; and the cases of Andrews v. Partington, (2 Cox 223), Brown v. Casamajor, (4 Ves. Jr. R. 498), and Hammond v. Neame, (1 Swanst. R. 35), illustrate the same principle. At the same time, a legacy to a parent upon trust, to be by him applied, or in trust, for the maintenance and education of his children, will certainly give the children a right, in a court of equity, to enforce their hatural claims against the parent in respect of the fund on which the trust is declared.” “It is, I am aware, difficult to reconcile all the decisions or cases of this nature; but although those decisions may not appear reconcilable with each other, I am satisfied that the learned judges by whom they have been pronounced did not mean to disregard the distinction *1 have noticed, or in any way to break in upon it. The difference has arisen inthe different modes of applying admitted' principles. In Raikes v. Ward, (1 Hare R. 445), and Crockett v. Crockett, (Id. 451), I thought, and still think, a trust was declared, as well as a motive expressed; and I am satisfied that neither Lord Cot-tenham, in Woods v. Woods, (1 Myl. & Cr. R. 401), nor Rord Hangdale, in Wetherell v. Wilson, (1 Keen R. 80), intended to negative the distinction to which I have adverted. ’ ’ The foregoing and other observations were made by the Vice-Chancellor in the first opinion delivered by him. In the second, he made the following: I am satisfied that, however long this case may be under consideration, there would still be some doubt upon it with reference to the authorities. I cannot, however, doubt the principle laid down by the Vice-Chancellor in Benson v. Whittam, (5 Sim. R. 22); it is plain to common sense that the law must be as it is there explained. If you give property to persons to accomplish an object, increasing their funds so that they might be the better able to do it — that is, in point of fact, a gift to them, and there is no trust which others can enforce. And I think those cases of Bushnell v. Parsons, (Prec. Chan. 218), Hammond v. Neame, (1 Swanst. R. 35), Bunell v. Bunell, (Amb. R. 660), Andrews v. Partington, (2 Cox 223), and others, are all cases in support of the same proposition, and recognizing the principle with great clearness. A great number of these cases might be cited, but I will not go through them; the principle cannot be at all doubted, although Judges may differ as to the mode of applying it. I think it equally clear, if property be given to a parent upon trust to maintain herself and her children, that although she takes a beneficial interest, and though to some extent there is an uncertainty as to the quantum she is bound to apply, it is impossible for me to hold that the cases do not ^decide that the court will find the means of measuring the extent of the children’s interest. The only question here is, under which of the two principles I am to say that this case falls. At the same time I agree with the argument, that if the expression that the gift is to support the children, extends to the support of the children throughout the whole of their lives, in the various situations that may arise, the impossibility, I may almost say, of measuring the gift to each child by any rule to be laid down by a court of justice, is — in a case where there is no trust excluding the mother from taking whatever she is not obliged to part with — a strong argument against holding that the expressions which refer to the children were meant to create a trust binding on her.” “I considered this case very much in private before I called for the second argument, and the conclusion to which I have come is, that the words of this will import a gift to the. .mother for life, and that afterwards the personal estate is to go to the testator’s children, and the real estate to his heirs at law. The testator adds tp the gift an explanation, which appears to me merely to express what actuated his mind in the gift. He trusts to the affection of the mother towards her children, and says: ‘I have given to her this large provision, in order that she may be able to support her children during her life. ’ The gift is to her, and the support is to be administered according to her discretion.” “I'confess I have'the less regret in coming to this conclusion, because, so far as respects the maintenance of the children during their minority, there appears to be no practical reason for deciding the case one way rather than the other; all such children having, in fact, been maintained by the widow. With regard to the other children, the difficulty of applying the fund in many cases which may arise, or be suggested, is such that I can hardly see any way of effecting it. The best legal conclusion, I think, is this: The ^testator has given the property to his wife absolutely, during her life. In order that the children may not suppose that they had been overlooked during that time, the testator tells them his reason for giving the property to the mother. I think, therefore, that the construction of the will is, that the widow takes the property absolutely for her life.”
Having quoted thus freely from the opinions of the Vice-Chancellor in the case just referred to, I will not prolong this opinion by reviewing other cases in detail, as I deem it wholly unnecessary to do so. The Vice-Chancellor said, as we have seen, that ‘ ‘the cases should be considered under two heads: first, those in which the court had read the will as giving an absolute interest to the legatees, and as expressing also the testator’s motive for the gift; and secondly, those in which the court has read the will as declaring a trust upon the fund, or part of the fund, in the hands of the legatee.” Now I consider this case as plainly falling under the first head, and if it does, then *715 there is an end of the question. Whether it does or not, depends upon the intention of the testator expressed by the words of his will read in the light of surrounding circumstances, all of which I have considered.
The cases arising under the second head, that is, where a trust is declared, and which, in 1 Jarm. on Wills, supra, p. 368, are sub-divided into two heads: first, those in which the purpose is so peremptorily expressed as to constitute a perfect trust; and secondly, those in which the will leaves entirely in the discretion of the primary donee the quantum of benefit to be communicated to the other persons, provided that such discretion is honestly exercised, have no bearing upon the case in my view of it, and I therefore will not notice them. Many of the cases referred to in the argument fall under this head.
Besides the EJnglish cases referred to, some of our own ^decisions were cited and relied on by the counsel on both sides, viz., the case of Harrisons v. Harrison’s adm’x, 2 Gratt. 1, on the side of the appellant, and the cases of Wallace & wife v. Dold’s ex’ors, &c., 3 Leigh 258, and Stinson, ex’or, &c. v. Day & wife, 1 Rob. R. 435, on the side of the appellees. But it is unnecessary to notice these cases any further, as they are not in conflict with the foregoing opinion, and two of them at least strongly confirm it.
The only other question involved in this case arises under the third clause of the will; and that is, as to the interest of the children in the capital of the estate, and the nature and extent ‘of the wife’s power of appointment over it.
And first, as to the wife’s power of appointment over it. The words of the third clause are: “I authorize my wife during •her widowhood, by deed or will, to dispose of all or any part of my estate to our children, or to any of them, at such times and in such proportions as she may think just and prudent; and if she marry or die without having exercised this power, then the estate remaining undisposed of shall be divided amongst my children, by assigning to the males double the amount of the shares assigned to the ¡¡females: Provided, that if my wife should die after having exercised her power of appointment in favor of one or more of our children, without having fully exercised it as to all my estate, the child or children so advanced shall, on the partition of my estate before directed, be held accountable for, and be charged with, the advancement received. The power of appointment given to my wife shall be construed to extend, to the descendants of any of our children who may die before her, and in the division before directed, the descendants of any deceased child or children shall be considered as entitled to the same share the parent or parents, if living at the time of such division, would be entitled to.”
*1 think there is no uncertainty or obscurity as to the intention of the testator in this clause, but. that it is as plainly expressed as language can well do it, notwithstanding the very ingenious argument made upon the subject by the learned counsel for the appellant. I think that the power of appointment given by the testator to his wife during her widowhood is subject only to this limitation as to the objects in whose favor it may be made; that it must be made in favor of one or more of the children of the testator, or of the descendants of any of them who may die before her, and that it extends over his whole estate and every part of it. She may appoint all or any part of the estate to all or any number of such children and descendants, “at such time and in such proportions as she may think just and prudent;” for so the will expressly declares. She may, therefore, if she shall think it “just and prudent” to do so, appoint all the estate to any number of such children and descendants, less than the whole, and even to any one of them. I think the words, “as she may think just and prudent,” refer to the whole preceding part of the same sentence for their antecedent, and not to the immediately preceding words, “at such times and in such proportions,” only. This was certainly very great power and wide discretion to give to the wife; but the testator had a right to give it, and I think plainly did so. If this be true, there is then an end of this matter, without any inquiry as to the reason for his doing so and the prudence of the act. That would have been an important inquiry if -there had been any room for doubt as to his meaning. He no doubt believed that he could safely entrust his wife and the mother of his children with this power and discretion, and that she would exercise them faithfully and wisely. He declared in his will how he wished his estate divided in default of such appointment by his wife in whole or in part, but he did not know *what might afterwards arise to make a different mode of division more just and prudent, and therefore he did not make that mode peremptory, but made it subject to the exercise of the power of appointment given to his wife as she might think to be just and prudent under all the circumstances. He did not intend to do injustice to any of his children. He did not intend to exclude any of them from a participation in his bounty. They were all equally near and dear to him, and so they were to their mother. He did not believe it possible that she would do injustice to any of them. At all events, he was willing to trust her, and preferred to run the risk of her possibly doing such injustice rather than prescribe a peremptory mode of division in the then state of his family. He could not know what changes would take place in their condition during the life of his wife, who has already survived him about thirty years. Some of his children might be so fortunate, in the course of events, as not to need any part of his estate, while others, *716 less fortunate, might stand greatly in need of it; which seems actually to be the case. Men may well differ in opinion as to the prudence of conferring such a power under the circumstances, but certainly the doing so, if unreasonable at all, is not so unreasonable as to require us, if anything could require us, to wrest the words of the will from what we consider their plain and natural meaning. The doctrine of illusory appointments does not apply to this case, but only to a case in which the appointment is to be made among persons of a certain class, so as to entitle each one of the class to a substantial portion of the subject.
And now as to the interest of the children in the capital of the estate. On this question I think there can be no doubt or difficulty. The estate is given to the wife during her life or widowhood, with remainder to the children, to be divided among them by assigning to the males ^double the amount of the shares assigned to the females, considering the descendants of any deceased child, or children as entitled to the same share the parent or parents, if living at the time of such division, would be entitled- to; but such remainder is subject to be divested by the exercise of the power of appointment given to the wife to the extent to which such power may be so exercised. In the event of only a partial, exercise of the power, leaving a portion of the estate unappointed and subject to division, the parties who may have received advancements under such exercise of the power will not be entitled to participate in the division without accounting for their advancements respectively as of their value at the times they were received, in the manner in which advancements are accounted for under the statute of descents and distributions. (Code of 1860, ch. 123, $ 15, p. 580.) But such parties respectively may elect not to participate in such division; but to retain and hold their advancements in full of their shares of the estate.
I have now, I believe, considered and disposed of all the questions arising in this case, and am of opinion that the decree of the Circuit Court should be reversed, and a decree entered declaring the true construction of the will to be as before mentioned. I think the widow and executrix is bound to keep a correct account of the estate of her testator, and of all appointments or advancements made by her under the will, and to exhibit the same to any of the parties' who may be interested therein and desire to see them. It does not appear that she has ’ been guilty of any default in this respect, nor that she has in any way mismanaged the estate or abused the power conferred upon her. On the contrary, she seems to have honestly and laboriously endeavored to manage the estate to the best advantage, and make the most of it for the benefit of her children. It may be well, however, since this *suit has been brought, to reserve libertjr to the parties, or any of them, to apply from time to time to the court hereafter by motion or petition in -the cause, for a decree for the settlement of such an account, and for any other relief to which they may then show themselves entitled in the premises. I think the costs of the suit in the Circuit Court, both of the plaintiffs and defendants, should be paid out of the testator’s-estate, but that the appellees should recover their costs in this court, as they are the parties substantially prevailing.
The other judges concurred in the opinion of Moncure, P.
The decree was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the testator, Thomson P. Mason, by the second clause of his will, gave his estate to his wife absolutely during her life or widowhood, and not in trust, “for her maintenance and support, and for the maintenance and -support” of their children; and that those words, in regard to maintenance and support, were merely used by him to indicate the motive of the gift; so that she is not bound to account to anybody for the income of the estate during her life or widowhood, or any part of it.
The court is further of opinion, that the power of appointment given by the testator to his wife during her- widowhood by the third clause of his will, is subject only to this limitation, as to the objects in whose favor it may be made; that it must be made in favor of one or more of the children of the testator, or of the descendants of any of them who may die before her, and that it extends over his whole estate and every part of it. She may appoint all or any part of the estate, to all or any number of such *children and .‘descendants, “at such times and in such proportions as she may think just and prudent;”-for so the will expressly declares. She may therefore, if she shall think it “just and prudent” to do so, appoint all the estate to any number of such children and descendants less than the whole, and even to any one of them. The words, “as she may think just „and prudent,” refer to the whole preceding part of the same sentence for their antecedent, and not to the immediately preceding words, “at such times and in such proportions,” only. The doctrine of illusory appointments does not apply to this case, but only to a case in which the appointment is to be made among persons of a certain class, so as to entitle each one of the class to a substantial portion of the subject.
The court is further of opinion, that by the third clause of the will, the remainder of the estate, not disposed of by the second clause, is given to the children of the testator, to be divided among them by assigning to the males double the amount of the shares assigned to the females, considering the descendants of any deceased child or children as entitled to the same share the parent or parents, if living at the time of such’division, would be entitled to; but *717 such remainder is subject to be divested by the exercise of the power of appointment given to the wife, to the extent to which such power may be so exercised. In the event of only a partial exercise of the power, leaving a portion of the estate unap-pointed and subject to division, the parties who may have received advancements under such exercise of the power, will not be entitled to participate in the division, without accounting for their advancements respectively as of their value at the time they were received, in the manner in which advancements are accounted for under the statute of descents and distributions. (Code of 1860, ch. 123, § IS, p. S80.) But such parties respectively may elect not to participate in such Mivision, but to retain and hold their advancements in full of their shares of the estate.
The court is further of opinion, that the widow and executrix is bound to keep a correct account of the estate of the testator, (but not of the income or profits to which she is entitled as aforesaid,) and of all appointments or advancements made by her under the will, and to exhibit the same to any of the parties who may be interested therein and desire to see them. And though it does not appear that she has been guilty of any default in this respect,^ nor that she has in any way mismanaged jthe estate or abused the power conferred upon her, but, on the contrary, that she has faithfully endeavored to manage the estate to the best advantage, and make the most of it for the benefit of her children; yet it seems to be proper, since this suit has been brought, to reserve in the decree to be made therein, liberty to the parties, or any of them, to apply from time to time to the court hereafter, by motion or petition in the cause, for an order or decree for the settlement of such an account, and for any other relief to which they may then show themselves entitled in the premises. ,
The court is further of opinion, that the costs of both parties, plaintiffs and defendants, in the court below, ought to be paid out of the estate of the testator, as the suit was occasioned by a doubt arising as to the true construction of the will, in the solution of which doubt they all were interested.
The court is therefore of opinion, that the said decrees of the sa id District and Circuit Courts are both erroneous. And it is decreed and ordered that the same be reversed and annulled, and that the appellants do pay unto the appellees as the parties substantially prevailing, their costs by them about their defence in this behalf in this court and the said District court expended. And this court proceeding *to pronounce such decree as the said Circuit court ought to have pronounced, it Is declared that the right of the parties, and the true construction of the second and third clauses of the said will', are as above set forth ; and it is further decreed and ordered, that the costs of both parties, plaintiffs and defendants, in the said Circuit court, be paid out of the estate of the said testator in the hands of his said executrix. And liberty is reserved to the parties, or any of them, to apply from time to time to the said court hereafter, by motion or petition in this cause, for the settlement of an account and further relief, as hereinbefore mentioned. Which is ordered to be certified to the said District court, the clerk of ■which is ordered forthwith to certify this decree to the said Circuit court.
Decree reversed in favor of the appellee.